649 So.2d 815 (1995)
Mary Frances Stennett TROVATO
v.
Douglas Wayne TROVATO.
No. 93-CA-00758.
Supreme Court of Mississippi.
January 26, 1995.
*816 Nancy J. Beck, Jackson, for appellant.
Lee B. Agnew, Jr., Kate S. Eidt, Agnew & Associates, Cynthia L. Perry, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
SULLIVAN, Justice, for the Court:
This action for civil contempt is brought on appeal to this Court charging three (3) assignments of error, all three of which have some merit. However, because of the misuse of Rule 53 of the Mississippi Rules of Civil Procedure, which pertain to Masters, Referees and Commissioners, this Court reverses and remands this case to the docket of the Chancery Court of Hinds County, Mississippi.[1]
*817 Mary and Doug Trovato were married in April of 1968 and divorced in January of 1984. They have two children; Teresa, who was fifteen (15) at the time of the divorce, and Tina, who was twelve (12) at the time of the divorce.
The parties entered a Property Settlement Agreement which, among other things, provided that Doug would be responsible for making child support payments in the amount of $150.00 per month per child "until each child shall attain the age of twenty-one years, marries, or otherwise leaves home, whichever comes first."
The agreement also provided that when the parties sold their home, they would divide the proceeds "in accordance with the separate agreement already entered into between the parties hereto." Mary was responsible for making the mortgage payments after the divorce.
On March 30, 1993, Mary filed a Motion For Citation for Contempt and Other Relief, claiming that Doug failed to comply with the terms of the divorce judgment and that he was in arrears in the amount of approximately $14,000.00. Mary further alleged the parties never entered into a separate agreement for the division of the proceeds from the sale of their home as contemplated by the divorce decree. She further claimed that because she made the great percentage of the mortgage payments, she was entitled to $42,226.90 of the $52,003.57 proceeds from the sale of the house. Mary also alleged Doug owed her an unspecified amount of money for failure to pay one-half of their daughters' uncovered medical and dental bills.
The lawyers, because of the crowded docket in Chancery Court in Hinds County, Mississippi, agreed that a special master could hear the case.
The special master ruled that Doug was not in arrears for the failure to pay child support because the daughters were emancipated during the relevant periods of time Mary complains of. The special master also ruled that the proceeds from the sale of their jointly owned home should be divided equally.
Mary filed an objection to the special master's report seeking the chancellor's reconsideration and modification on the grounds that the special master made errors of law. The chancellor set a date for a hearing of this matter, but on that date declined to hear it. The chancellor upheld the special master's findings and conclusions, and denied Mary's motion. On appeal Mary raises the following issues:

1. The Special Master's finding of the emancipation of Tina and Teresa is in error.
Actually on the question of emancipation of Teresa the call is a close one. The record on its face does not appear to support the finding of the special master that these girls were emancipated during the periods of time in question when Doug was failing to make payments. Other than two brief periods where Teresa attempted to live on her own, Mary provided a great deal of parental care and support for both daughters even while they were not in school and were working. The special master's finding that they were emancipated appears to be erroneous. Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss. 1991).

2. The court's finding concerning the division of proceeds from the sale of the house was not equitable.
Doug concedes that he never made another payment after moving out of the house after the divorce. It is uncontradicted that Mary made approximately eighty percent (80%) of the payments on the home. Doug claimed that they verbally agreed to split the proceeds equally and that this was fair because, although Mary made all the payments after the divorce, she was able to live in and enjoy the home during the time she made those payments.
*818 Because Mary had the advantage of living in the home, she might not be necessarily entitled to a share of the proceeds proportionate to the payments she made. Doug, however, is not automatically entitled to an equal share. Brown v. Brown, 574 So.2d 688, 691 (Miss. 1990). Taking into account the fact that Mary made a significantly larger contribution to the acquisition of the property, coupled with the fact that during some of the time she was making payments Doug was not making child support payments, equal distribution of the proceeds was an abuse of discretion. This case should be remanded for a more equitable distribution of property not inconsistent with that stated above.

3. The chancellor abused his discretion in failing to enter an Order of Reference appointing the Special master, in failing to exercise independent discretion before affirming the Master's report and in failing to hear Mary's objection to the Special Master's report.
This is the controlling assignment of error in this case. Rule 53 of Mississippi Rules of Civil Procedure provides, among other things, as follows:
MASTERS, REFEREES, AND COMMISSIONERS
(c) Reference: When Made. A reference to a master shall be the exception and not the rule. A reference shall be made only upon a showing that some exceptional condition requires it.
(e) Proceedings. When a reference is made, the clerk shall forthwith furnish the master with a certified copy of the order of reference, which shall constitute sufficient certification of his authority. Upon receipt thereof, unless the order of reference otherwise provides, the master shall forthwith set a time and place for the first meeting of the parties or their attorneys which is to be held in any event within ten days following the date of the order of reference and shall notify the parties or their attorneys. It is the duty of the master to proceed with all reasonable diligence. Either party, on notice to the parties and master, may apply to the court for an order requiring the master to speed the proceedings and to make his report. If a party fails to appear at the time and place appointed, the master may proceed ex parte or, in his discretion, may adjourn the proceedings to a future day, giving notice of same to the absent party.
(g) Report.
(1) Contents and Filing. The master shall prepare a report upon the matters submitted to him by the order of reference and, if required to make findings of fact and conclusions of law, he shall set them forth in the report. He shall file the report with the clerk of the court and, unless otherwise directed by the order of reference, shall file with it a transcript of the proceeding and of the evidence in the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.
(2) Acceptance and Objections. The court shall accept the master's findings of fact unless manifestly wrong. Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as provided by Rule 6(d). The court after hearing may adopt the report or modify it or may reject it in whole or in any part or may receive further evidence or may recommit it with instructions.
(3) Stipulation as to Findings. The effect of a master's report is the same regardless of whether the parties have consented to the reference; however, when the parties stipulate that master's finding of fact shall be final, only questions of law arising upon the report shall thereafter be considered.
(4) Draft Report. Before filing his report a master may submit a draft thereof to counsel for all parties for the purpose of receiving their suggestions.
When Mary filed her motion objecting to the findings of the special master the following colloquy took place between Mary's counsel and the court.
BY THE COURT: Let me ask you a question.

*819 BY MS. BECK: Yes, sir.
BY THE COURT: I'm sorry to interrupt you. But why was this case heard by the Special Master instead of by me? Do you know?
BY MS. BECK: We just agreed to it.
BY THE COURT: Did y'all agree to it?
BY MS. BECK: Yes, sir, Your docket was pretty loaded up.
BY THE COURT: Well, that's where the problem is. In other words, you're saying that you didn't like the decision of the Special Master.
BY MS. BECK: Yes, sir.
BY THE COURT: So you want two bites at the apple.
BY MS. BECK: Well, I thought that we had a right to appeal it to you.
BY THE COURT: No, you don't, not when you agree to it.
BY MS. BECK: It's only a recommendation to you.
BY THE COURT: It is a recommendation, which I'm going to affirm his decision if y'all agreed that he could hear it in lieu of me. Because, otherwise, why have a Special Master? Whoever loses every time is going to come in and say, "I didn't like his decision. He was wrong. I want you to hear it." So that gives you two shots at it. And it doesn't work when it's by agreement.
BY MS. BECK: I thought we had that right.
BY THE COURT: Not when you agree to have him hear it in lieu of me.
BY MS. BECK: Okay. Well, I didn't know that.
BY THE COURT: Well, you do now.
BY MS. BECK: This is the first time that I've ever had an occasion to try to appeal from the ruling of a Special Master. It's always been fine before. But I don't think he followed the law.
BY THE COURT: If I assign a case, such as say a Department of Human Services case, to a Special Master, and this is done strictly by me and you have no say-so or whatever and you disagree with it, then I have to review it.
BY MS. BECK: Okay.
BY THE COURT: But where y'all say, "Your docket is too crowded. We'll agree to a Special Master so that we could go ahead and have a fast hearing," then you've got to go to the Supreme Court and not to me.
BY MS. BECK: Well, okay. I guess that's what I'll do. Do you want me to hush, or do you want me to finish my argument?
BY THE COURT: Well, I mean you can talk, but it's not going to do anything, other than clutter the record.
BY MS. BECK: Okay. Thank you very much.
* * * * * *
BY THE COURT: And for future reference now, and this is for the benefit of all the lawyers in the court, and not just you, Ms. Beck, but where you do agree to use a Special Master, you are bound by that Special Master's decision.
BY MS. BECK: Well, that's just my ignorance, Your Honor, because I truly didn't know that.
BY THE COURT: Well, that's the way it works, though.
As can be seen from comparing this colloquy with the content of Rule 53, it is apparent that the procedure set forth in Rule 53 was not followed. There is no indication in the record that the court ever appointed, or issued an order of reference for, a special master. In fact, the chancellor had to ask why this case was heard by a special master and not him. Furthermore, even if the chancellor had issued an order of reference, it is far from certain that the congested docket referred to by Ms. Beck is an exceptional condition requiring the court to appoint a special master as required by the rule.
Ms. Beck and Mr. Agnew determined that the court docket was congested and requested that a special master hear this case. Ms. Beck did not like the special master's decision and report and attempted to appeal this matter to the chancellor.
The chancellor was incorrect in his statements regarding Rule 53 and the court's *820 authority to appoint special masters and review their reports. If proper procedure is followed, any party may serve written objections to the master's report within ten days of the report being filed. Then, the "court after hearing may adopt the report or modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." Rule 53(g)(2). Additionally, "[t]he effect of a master's report is the same regardless of whether the parties have consented to the reference... ." Rule 53(g)(3).
It is clear that the chancellor was wrong to assert that if the parties agree to the appointment of a special master then they are bound by his report. The fact that a party agrees or consents to the appointment of a special master is of no consequence. It is only when the parties have stipulated that the master's findings of fact shall be final that the chancellor's review of the special master's report is limited to questions of law. The chancellor was equally wrong to state that he is only responsible for considering the parties' objections to the special master's report when he has forced the parties to have the case heard by a special master. Rule 53(g)(3) makes it clear that consent by the parties is irrelevant.
Even if the parties stipulate to a special master or agree as they did here they may still appeal to the chancellor on questions of law; which, from the transcript, is exactly what Ms. Beck was attempting to do.
Rule 53 seems to be designed to lighten some of the court's workload when exceptional circumstances arise. The chancellor was concerned that parties would always appeal cases to him after the special master enters his report if it was not favorable to them. They might. They can.
After hearing a brief recitation of the facts at the hearing on Mary's motion objecting to the special master's report, the chancellor interrupted the proceedings and the dialogue quoted above ensued. The chancellor never read the briefs submitted to him in support of the motion by Mary. The chancellor never had a hearing on Mary's objections. He threw the case out proclaiming that Mary was not be entitled to two bites at the apple because the parties had agreed to the special master hearing the case. Aside from the problem that the special master lacked authority to hear the case in the first place, Rule 53 contemplates the idea that if a party objects to the special master's report, the chancellor must in fact hear the objections and not merely sign off on the submitted report. The chancellor's refusal to hear any argument whatsoever from the parties was an abuse of discretion.
Mary's argument that the absence of the proper order of reference voided the special master's report is without merit as she waived it when she proceeded before the special master without the order of reference. Massey v. Massey, 475 So.2d 802, 806 (Miss. 1985).
However, the remainder of this assignment was not waived and the chancellor committed reversible error. This cause is reversed and remanded to the Chancery Court of Hinds County, Mississippi.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs that M.R.C.P. 53 was not followed.
NOTES
[1] Mississippi Code Annotated § 9-5-255 provides for the appointment of "family masters" by the senior chancellor of each chancery court district. However, this statute requires that the senior chancellor apply to the Chief Justice of the Supreme Court upon written statement that the chancery court district's docket is crowded enough to require this position or positions. The Chief Justice will determine whether such a position is warranted, and a family master shall be appointed if the Chief determines the need exists. This new statute replaces the old § 9-5-255 which did not require the involvement of the Chief Justice of the Supreme Court. The qualifications of a family master remain the same; they must possess all the qualifications required of circuit and chancery court judges. The powers and duties of the family master also remain unchanged from the old statute.

Rule 53 of the Mississippi Rules of Civil Procedure provides for the appointment of "special masters." The special master position appears to be different from the "family master" described in § 9-5-255. The qualifications of the special master, and the powers, duties, and procedures for hearing a dispute are significantly different from those required of a family master.
It does not appear that the appointment of special masters on a per case basis allowed by Rule 53 has been disturbed by the passage of the new § 9-5-255. It is less clear whether the Rule 53 appointment of masters for each county is affected by the new requirements of § 9-5-255. Family masters, in the cases referred to them, are granted all the powers currently possessed by the masters and commissioners in chancery court. Senior chancellors are forewarned, however, that they should maintain a clear distinction as to what capacity a master is operating under and follow the divergent rules required for special masters and family masters. Failure to maintain this distinction could result in serious repercussions somewhere far into the future.