# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00978-COA

**ROBERT O. BAUMBACH**                                                    **APPELLANT**

**v.**

**JENNIFER ANNE BAUMBACH**                                              **APPELLEE**

DATE OF JUDGMENT:                    06/06/2016
TRIAL JUDGE:                         HON. DOROTHY WINSTON COLOM
COURT FROM WHICH APPEALED:           LOWNDES COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:             TIFFANY ALAYNE YATES
                                     RACHEL LEE HODGES
ATTORNEY FOR APPELLEE:               CARRIE A. JOURDAN
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
DISPOSITION:                         AFFIRMED IN PART; REVERSED AND
                                     REMANDED IN PART - 04/03/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   EN BANC.

   BARNES, J., FOR THE COURT:

¶1. Robert and Jennifer Baumbach were granted a divorce on the ground of irreconcilable differences on January 25, 2016. Subsequently, in a June 6, 2016 order determining the remaining issues, the Lowndes County Chancery Court awarded Jennifer sole physical custody of the couple's minor children, the marital residence, all of her 401(k) and Roth IRA, twenty-five percent of Robert's 401(k), and a portion of Robert's military pension. Robert was awarded the couple's other real-estate holdings, which had a negative value of $357,000, and he was ordered to pay rehabilitative alimony, child support, private-school tuition, and mortgage payments on the marital home. Robert was also ordered to maintain a life-

insurance policy with Jennifer as the primary beneficiary.

¶2. Robert filed a motion to alter or amend the judgment, requesting a clarification of visitation and alleging numerous errors such as the award of alimony, attorney's fees, and the equitable division of the marital assets. While the chancery court granted the motion in part on the issue of visitation, it denied the motion as to the other issues raised. Aggrieved, Robert now appeals.

¶3. Finding the chancery court (1) failed to make specific findings regarding the deviation from child support in excess of the statutory guidelines; (2) failed to address the specific *McKee* factors and whether Robert would be forced to liquidate assets to pay Jennifer's attorney's fees; and (3) erred in the equitable division of marital assets, we reverse the court's judgment in part and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶4. Robert and Jennifer were married in Florida on November 9, 2003. Jennifer was employed as a flight attendant, and Robert was a pilot with the United States Air Force. A daughter was born of the marriage on October 13, 2006. Jennifer remained employed but used her maternity and sick leave to stay home with the child.

¶5. In August 2008, the couple moved to Columbus, Mississippi, where Robert was stationed with the Air Force. A second daughter was born on May 23, 2009. The couple purchased a marital residence in Columbus, valued at $400,000; they also owned four rental properties in Florida through their company, RJB Real Estate Holdings. Although both children were enrolled in school, Jennifer never returned to work. Robert retired from the

2

Air Force on September 1, 2013, and went to work for Delta Airlines, which required him to be out of town often. Eventually, he moved into an apartment in Atlanta in April 2014, and the couple separated.

¶6. Jennifer filed a complaint for divorce with the chancery court on May 22, 2014, alleging habitual drunkenness and habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences. In the complaint, she sought sole legal and physical custody of the couple's children, child support, medical insurance, an equitable division of marital assets, alimony, attorney's fees, and temporary support. She requested an emergency hearing for temporary relief, seeking exclusive use and possession of the marital home, sole custody of the children, and a restraining order against Robert.

¶7. Robert filed an answer and counterclaim for divorce, citing the same grounds. He requested sole legal and physical custody of the children, child support, reimbursement for one-half of insurance premiums, and all real property owned by the parties, except for the marital residence. He later supplemented his claim with an affidavit citing instances of Jennifer's excessive drinking, and alleging she had verbally and physically assaulted him. He also refuted Jennifer's claims of habitual drunkenness and noted he had not failed any random drug and alcohol tests by the Federal Aviation Administration over the years.

¶8. The chancellor appointed a guardian ad litem (GAL) on July 10, 2014, to investigate the allegations of heavy drinking, prescription drug use, and verbal abuse by both parties. On July 31, 2014, the chancery court temporarily awarded Jennifer "the sole use, possession and control of the marital home, the marital property and contents," and issued a restraining

3

order against Robert, excepting prescribed visitation with the minor children.

¶9.    The GAL's report noted that both parties had "a history of drinking excessively." The report also expressed concern that Jennifer's drinking caused her to be "a very 'angry drunk.'" However, the report determined that both parties were sincere in their claims they were no longer drinking and "neither parent poses any risk of danger to the children." Because the children were already enrolled in school, the GAL recommended they remain in Jennifer's physical custody until a final hearing on the matter.

¶10.    On October 14, 2014, the chancery court entered a temporary order, awarding Jennifer temporary legal and physical custody of the children, with Robert entitled to visitation. Robert was ordered to pay $3,000 a month in temporary alimony, $2,000 a month in child support, the mortgage and related expenses for the marital home, and any other joint debts of the parties, except utilities for the residence, which were to be paid by Jennifer. Robert filed a motion for reconsideration, which the court denied.

¶11.    On November 14, 2014, Jennifer filed a motion for contempt, claiming Robert was $9,400 in arrears for temporary alimony and child support.[1]  On November 17, 2014, Robert also filed a petition for contempt, asserting Jennifer was denying him reasonable visitation and telephone contact with the children. Robert filed a subsequent motion for an emergency hearing and a response to Jennifer's motion for contempt, claiming he was simply "unable to pay due to a huge loss in his business." He argued that Jennifer should bear fifty percent of the costs to maintain the couple's four rental properties.

_____

[1] On November 18, 2014, the chancellor entered an order requiring Robert's employer, Delta Airlines, to withhold child support from his salary.

4

¶12. On June 1, 2015, Robert filed another petition for contempt. He claimed Jennifer continued to be uncooperative with visitation and was not paying the household bills or the children's school tuition. Jennifer responded that Robert had been aggressive when exchanging the children and that the children were unkempt and had not bathed after visitation with their father.

¶13. Two months later, Jennifer filed a motion to suspend Robert's visitation pending investigation, asserting claims that a couple of weeks after Robert's visitation with the girls in June, she found a search history of pornographic material on the iPad used by the couple's daughters. She attached an affidavit by a technology consultant, Benjamin Hurt. Robert denied the accusations, and he provided an affidavit from a computer forensic examiner who had reviewed the iPad and determined the information gathered by Hurt did "not originate from the iPad Mini under investigation but rather from an additional two iPads and an iPhone that were also associated" with Robert's Apple account. Thus, the examiner questioned the integrity of Hurt's results and concluded that he had "accessed these web sites, and, in turn, destroyed the evidence." On October 6, 2015, the chancery court appointed a second GAL to investigate the allegations. Upon recommendation by the second GAL, the chancellor reinstated temporary visitation to Robert on January 19, 2016.

¶14. On January 25, 2016, the parties consented to an entry of a divorce based upon irreconcilable differences. All other contested matters were submitted to the court for review. A trial was held on February 12, 2016. Jennifer filed a motion for contempt of the temporary order and to reopen the hearing on June 2, 2016, asserting that Robert was $57,000

in arrears for alimony and $2,225 in arrears for child support.

¶15.    The chancery court entered a final judgment on June 6, 2016. Jennifer was awarded: (1) sole physical custody of the couple's minor children; (2) the marital residence and one-half of the equity;[2] (3) her 2008 Toyota Sequoia valued at $10,500; (4) her 401(k) and Roth IRA fund cumulatively valued at $92,000; (5) twenty-five percent of Robert's 401(k) which percentage was valued at $92,000; (6) one-half of eight years of his military pension;[3] and (7) one-half of the couple's last joint income-tax refund. Robert was awarded the couple's other real-estate holdings, four rental properties in Florida with a negative value of $357,000. He was also awarded his thrift savings plan valued at $21,900, seventy-five percent of his 401(k) which percentage was valued at $276,000, and a mortgage investment account valued at $6,000. Robert was ordered to pay: (1) $1,500 per month in rehabilitative alimony for thirty-six months for a total of $56,000; (2) $1,817 per month in child support;[4] (3) all tuition and fees associated with the children's private-school education;[5] (4) mortgage payments (approximately $2,400 monthly), taxes, and insurance on the marital home. He was also ordered to provide health insurance for the children. The chancery court further directed Robert to pay $48,000 in arrearage for temporary alimony, paying $1,000 per month until the

[2] The court required Jennifer to sell the home when either: (1) the children graduate from high school; (2) she remarries; or (3) she moves. Robert was awarded one-half of the equity.

[3] Robert testified he had twenty-four years of service.

[4] Robert stated his annual salary was approximately $200,000, and the chancellor determined that Robert's monthly adjusted gross income was $9,093.

[5] The parties are to split equally the costs of the children's extracurricular activities.

amount is paid in full.

¶16. Additionally, Robert was ordered to maintain a $500,000 life-insurance policy with Jennifer as the primary beneficiary. Finding Jennifer in contempt for denying Robert his visitation and telephone contact, the court awarded Robert $10,000 in attorney's fees. But he also awarded Jennifer $15,000 in attorney's fees, finding she had no ability to pay the fees without liquidating assets.

¶17. Robert filed a motion to alter or amend the judgment on June 16, 2016, objecting to the "award of alimony, division of property and debts, award of attorney fees, and judgment of past[-]due alimony." He specifically argued that the monthly financial obligation imposed on him was "excessive and unreasonable," as it exceeded seventy percent of his adjusted monthly gross income. He also claimed the chancery court's order to maintain the $500,000 life-insurance policy would cause him to exceed his available income and created a risk of harm to him because Jennifer had previously threatened him. Lastly, he requested clarification of the visitation.

¶18. The chancellor granted Robert's motion to clarify visitation on June 27, 2016, but denied his motion as to the other assignments of error. Robert now appeals.

## STANDARD OF REVIEW

¶19. Our appellate standard of review in a domestic-relations matter is limited – we generally will not overturn a chancery court's findings of fact unless they are "manifestly wrong or clearly erroneous," or it "applied an erroneous legal standard." *White v. White*, 208 So. 3d 587, 592 (¶10) (Miss. Ct. App. 2016) (citations omitted). "In the case of a divorce

7

decree, facts will be viewed in a light most favorable to the appellee." *Id*. (quoting *G.B.W.*

*v. E.R.W.*, 9 So. 3d 1200, 1204 (¶8) (Miss. Ct. App. 2009)).

## DISCUSSION

**I.      Whether the chancellor erred in awarding Jennifer physical custody of the children.**

¶20.    Citing Jennifer's previous attempts to interfere with his visitation, Robert claims the

chancellor's decision to award Jennifer sole physical custody of the children "was against the

weight of the evidence and should be overturned." Jennifer contends that because Robert did

not address the issue of custody in his motion to amend the judgment, he is procedurally

barred from asserting it on appeal.  However, in reference to Mississippi Rule of Civil

Procedure 59, the Mississippi Supreme Court has stated:

> [Although i]t is clearly the better practice to include all potential assignments
> of error in a motion for new trial . . . when the assignment of error is based on
> an issue [that] has been decided by the trial court and duly recorded in the
> court reporter's transcript, . . . [an appellate court] may consider it regardless
> of whether it was raised in the motion for new trial.

*Kiddy v. Lipscomb*, 628 So. 2d 1355, 1359 (Miss. 1993); *see also Jackson v. State*, 423 So.

2d 129, 131 (Miss. 1982) ("[I]t is not necessary to make a motion for a new trial grounded

upon errors shown in the official transcript of the record, including the pleadings, transcribed

evidence, instructions, verdict[,] and judgment of the court.").  Since the issue of child

custody was clearly decided by the chancery court at trial, we find any failure to raise this

issue in Robert's motion to alter or amend the judgment does not bar it from review on

appeal.

¶21.     "In reviewing a child custody decision, we will affirm unless the chancellor was

manifestly wrong, the decision was clearly erroneous, or the chancellor applied an erroneous legal standard. Error arises if the chancellor's decision is not supported by substantial evidence in the record." *Ethridge v. Ethridge*, 226 So. 3d 1261, 1262 (¶5) (Miss. Ct. App. 2017) (quoting *Limbaugh v. Limbaugh*, 749 So. 2d 1244, 1246 (¶9) (Miss. Ct. App. 1999)). In *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), the supreme court held that "the polestar consideration in child custody cases is the best interest and welfare of the child." Factors to be considered in determining an award of custody are:

> [the] health[] and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school[,] and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of [the] home environment and employment of each parent[;] and other factors relevant to the parent-child relationship.

*Id*. In this case, the chancellor thoroughly considered the applicable *Albright* factors and determined that the following factors favored Jennifer: continuity of care; employment of the parent and responsibilities of that employment; home, school, and community record of the children; and stability of the home environment. As to the remaining factors, including parenting skills and moral fitness, the chancellor found neither party was favored.

¶22. We find no manifest error in the chancellor's determination to award sole physical custody to Jennifer. As the chancellor mentioned, the children had grown up in Columbus, with Jennifer as the primary caregiver. Robert lived in Atlanta, and was frequently traveling due to his job as a pilot, with little support to help him with the children. Accordingly, this

9

issue is without merit.

II.    **Whether the chancery court erred in ordering Robert to pay the children's tuition and fees in addition to child support.**

¶23.    The chancery court ordered Robert to pay $1,817 per month in child support. This amount represents twenty percent of his adjusted gross income per the statutory guidelines in Mississippi Code Annotated section 43-19-101(1) (Rev. 2015). Additionally, the court determined that Robert should pay the children's tuition and fees for private school. The children attend a private school in Columbus with a monthly tuition cost of $780.

¶24.    Robert argues that this was a deviation from the child-support guidelines and required additional findings of fact by the court. Therefore, he argues this award should be reversed. We agree. Ordinarily, "[p]re-college tuition is considered part of child support, not an extraordinary expense," and the chancery court may not require a parent to pay said tuition in excess of the statutory percentage "without a written or specific finding . . . as to why the deviation is needed." *Moses v. Moses*, 879 So. 2d 1043, 1048 (¶14) (Miss. Ct. App. 2004) (citing *Southerland v. Southerland*, 816 So. 2d 1004, 1006 (¶11) (Miss. 2002) & § 43-19-101(2)). Since the chancery court failed to make specific findings as to why Robert should be obligated to pay the children's tuition in excess of the ordered child support, we reverse the judgment as to this issue and remand for further findings, especially as Robert's court-ordered monthly financial obligations of over $6,500 exceed, as he notes in his brief, "seventy percent (70%) of his monthly income." Jennifer even acknowledges that "Robert is paying a large percentage of his income to support [her] and [the] children." While we acknowledge that Robert's adjusted gross income exceeded $100,000, as noted by Judge Fair

10

in his dissent, section 43-19-101(4) requires in such cases that the chancery court "make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable." Here, the chancellor simply determined that Robert "shall pay child support in the amount of $1,817.00 per month" and additionally, "shall be responsible for the timely payment of all tuition and fees associated with the children attending Annunciation Catholic School." There were no specific findings by the court as to its reasons for exceeding the statutory maximum for child support.

### III. Whether the chancery court erred with regard to the property division.

¶25. In determining the equitable division of the marital assets, the chancery court considered the applicable factors in *Ferguson v. Ferguson*, 639 So. 2d 921, 918 (Miss. 1994), and awarded Jennifer: (1) the marital home valued at $400,000;[6] (2) all furnishings and personal property in her possession valued at $36,200; (3) a 2008 Toyota Sequoia valued at $10,500; (4) Jennifer's 401(k) and Roth IRA valued at $92,000; (5) twenty-five percent of Robert's 401(k) which percentage was valued at $92,000; (6) one-half of eight years of Robert's military pension;[7] and (7) one-half of the couple's $10,000 joint tax refund. Robert was awarded: (1) one-half the equity in the marital home;[8] (2) four Florida rental properties with a negative value of $357,000; (3) a 2006 BMW valued at $6,250; (4) seventy-five

---

[6] Robert testified the equity on the home was approximately $50,000.

[7] Robert was ordered to pay any costs associated with this retirement fund to ensure Jennifer receives the monthly amount, "unless a lump sum is permissible."

[8] *See* n.2, *supra*.

11

percent of his 401(k), which percentage was valued at $276,000; (5) his thrift savings plan valued at $21,900; and (6) a mortgage-investment account valued at $6,000. Robert also received the remainder of his miliary pension. While each party was to be responsible for all debt solely in his or her name, Robert was ordered to pay the mortgage on the marital home (approximately $350,000).

### A. Consideration of Temporary Support

¶26. Citing *Wells v. Wells*, 35 So. 3d 1250, 1259 (¶41) (Miss. Ct. App. 2010), Robert argues the chancery court erred in failing to consider the temporary support he paid in the months leading up to trial as a relevant factor in its *Ferguson* analysis. While the trial court in *Wells* did consider the temporary support paid by the husband as one "other factor" to be considered under *Ferguson*, *Wells* does not stand for the proposition that a trial court's failure to consider temporary support in its equitable division of marital assets constitutes reversible error. Nor have we found any case to support Robert's claim of error. Accordingly, we find the failure to address any temporary support paid by Robert in the analysis of the *Ferguson* factors was not reversible error.

### B. Equity Award of Marital Residence

¶27. Although Jennifer retained exclusive use of the marital home without the responsibility of the $350,000 mortgage debt associated with it, the chancery court also awarded her one-half of the equity in the home at such time she decides to sell it, finding that "[b]oth parties contributed to the accumulation of marital assets." While we find no abuse of discretion in the chancery court's determination that Jennifer's homemaking contributions

were equal to those of her wage-earning spouse, *see Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994); in this particular instance, we agree with Robert's argument that because he has made all contributions to the home's mortgage, the court's decision to order the equity proceeds from the eventual sale of the marital home to be split equally is inequitable.

¶28.    Our supreme court has held: "An equitable division of property does not necessarily mean an equal division of property." *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009) (quoting *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994)). "[F]airness is the prevailing guideline in marital division." *Ferguson*, 639 So. 2d at 929. An equal distribution of proceeds from the sale of a marital home may be an abuse of discretion if the contributions by one spouse are disproportionately large. *Trovato v. Trovato*, 649 So. 2d 815, 817-18 (Miss. 1995). In *Trovato*, the chancery court awarded the wife the marital home, but she also bore the responsibility for the remaining mortgage debt. *Id*. at 817. The husband made no contributions to the home after the divorce. *Id*. However, the court ruled that the proceeds from the sale of the home should be split equally. *Id*. The supreme court concluded:

> Because [the wife] had the advantage of living in the home, she might not be necessarily entitled to a share of the proceeds proportionate to the payments she made. [The husband], however, is not automatically entitled to an equal share. *Brown v. Brown*, 574 So. 2d 688, 691 (Miss. 1990). Taking into account the fact that [the wife] made a significantly larger contribution to the acquisition of the property, coupled with the fact that during some of the time she was making payments [the husband] was not making child support payments, equal distribution of the proceeds was an abuse of discretion.

*Id*. at 818. Here, Robert is paying all of the mortgage debt, but Jennifer is allowed to live debt-free in the marital home *and* benefit from the growing equity that Robert's mortgage

13

payments will provide. Thus, while it may have been equitable to award Jennifer one-half of the equity at the time of the couple's separation (approximately $25,000), we do not find it equitable for her to reap the ongoing benefits of any equity invested by Robert after their divorce, especially considering that Jennifer could potentially live in the marital residence for a number of years,[9] and Robert is responsible for all of the marital debt.

¶29. We do observe that the chancery court remarked in its *Ferguson* analysis that the marital property "needs to be divided to eliminate periodic payments and to avoid friction between the parties." Therefore, this equity award potentially may be in lieu of an award to Jennifer for periodic alimony. But given the broad, non-specific language used by the chancellor with regard to this *Ferguson* factor, and her award of rehabilitative alimony to Jennifer ($1,500 a month for three years), we decline to make this assumption. Therefore, we reverse and remand for the court to address the disparity between Robert's contributions and the equity award in the marital home.

### C.    Division of Marital Debt

¶30. Lastly, Robert argues the court erred in its division of marital assets because he was "burdened" with the $375,000 debt owed on the Florida properties, as well as the $350,000 mortgage on the marital home occupied by Jennifer and the children; therefore, Jennifer is being "unjustly enriched." At trial, Robert submitted two proposals for the equitable distribution of the marital assets. In one proposal, Jennifer would be awarded the equity in

---

[9] *See* n.2, *supra*. The youngest child, born in 2009, would not be expected to graduate from high school (one of the triggering events for the sale of the marital residence) for another eleven years after the date of the court's order.

the marital home and her retirement; Robert would retain the four rental properties with their negative value, but keep his entire 401(k). The second proposal involved selling the investment properties and awarding Jennifer a portion of Robert's retirement – essentially, a 50/50 split of assets. However, Robert testified that it was unlikely they would be able to sell the rental properties at that time "without eating a large debt somehow[.]"[10]

> [COUNSEL]      Okay. So is there any option that you see, as we sit here today, for you to off load these properties or anything like that?
>
> [ROBERT]      Bankruptcy would be about it.
>
> [COUNSEL]      Okay. Other than bankruptcy.
>
> [ROBERT]      I mean, keep them occupied and keep running them is the only way.
>
> . . . .
>
> [COUNSEL]      Are you making any profit off any of these based on what you are getting in rent or anything like that?
>
> [ROBERT]      Definitely not.

Robert reiterated that while the Florida properties could be sold, "it's going to be a major loss and somehow I would have to come up with the money to . . . pay off the loans."[11] He expressed to the court that he really did not want the properties, calling them a "financial drain," but said he would take them "in exchange for retaining [his] full active duty pension"

---

[10] The proposal indicated no profit from the sale of the rental properties.

[11] Jennifer did not dispute that the properties were subject to considerable debt. When asked on cross-examination if all Robert would be awarded "is four underwater pieces of property [with a] complete negative equity," Jennifer replied, "Correct[,] if you want to put it that way."

and his 401(k) funds.

¶31.  Instead, the chancery court ordered Robert to be responsible for all of the debt for the real estate (both in Florida and Mississippi), *and* Jennifer received $92,000 in the form of a fractional portion of both Robert's retirement and part of his pension.  The only debt awarded to Jennifer was her car note.  In making its determination under *Ferguson*, the court noted that Robert was already responsible for all of the marital debt for the homes and vehicles and "clearly has the potential to currently earn more than [Jennifer]."

¶32.  "Debts acquired during the course of the marriage are also subject to equitable distribution."  *Carter v. Carter*, 98 So. 3d 1109, 1114 (¶15) (Miss. Ct. App. 2012) (citing *McLaurin v. McLaurin*, 853 So. 2d 1279, 1285-86 (¶24) (Miss. Ct. App. 2003)).  In *Burnham v. Burnham*, 185 So. 3d 358, 362 (¶13) (Miss. 2015), the trial court awarded the wife assets "with a total value of $303,225.84, and none of the marital debt[, while the husband] received $217,904.64 worth of marital assets but the entire $225,472.79 in marital debt."  This left the husband with assets and debt with a negative value of $7,568.15, which the supreme court determined to be "a significantly disparate property distribution."  *Id*.

¶33.  Similarly, in the present case, Jennifer was awarded over $250,000 in marital assets, not including what she is to receive from Robert's pension.  Conversely, due to the approximately $700,000 in marital debt assigned to Robert, the value of marital assets attributed to Robert is less than zero, as the debt negates any value from his retirement accounts.[12]  While it is undisputed that Robert's income is substantially greater than

---

[12] No one estimated the value of his military pension.

Jennifer's, we cannot see how awarding Robert all of the marital debt associated with the couple's real estate is equitable.

¶34. Accordingly, finding the chancery court abused its discretion in the division of marital property, specifically the division of the marital debt, we remand for additional findings and a new equitable distribution.

### D. Valuation of Retirement Accounts

¶35. Robert also asserts that the chancery court's valuation of his retirement accounts was incorrect because the court valued the accounts as of the date of the trial, not the date of the temporary order. Noting he contributed to the retirement accounts after the temporary order was in place, Robert contends those funds were separate property.

¶36. Robert has not cited any authority to support his claim; nor has he assigned any value to those funds he alleges are separate property as evidence of the disparity in the award. The supreme court has held: "[W]hen equitably dividing marital property upon divorce, the date of valuation is necessarily within the discretion of the chancellor." *Hensarling v. Hensarling*, 824 So. 2d 583, 591 (¶25) (Miss. 2002) (quoting *MacDonald v. MacDonald*, 698 So. 2d 1079, 1086 (Miss. 1997)).

**IV. Whether the chancery court erred in awarding Jennifer rehabilitative alimony.**

¶37. The chancellor awarded Jennifer $1,500 a month for thirty-six months in rehabilitative alimony. Robert argues that the record does not support a finding that Jennifer is in need of alimony after the property division in this case. Further, he claims that he cannot "achieve a reasonable standard of living after paying the alimony award and other obligations placed

17

on him by the property division."

¶38. In his separate opinion, Judge Tindell suggests that "[s]ince other issues regarding equitable distribution are being remanded" for consideration, likewise, the issue of rehabilitative alimony should also be remanded. However, while "[o]rdinarily, the reversal of a chancellor's division of marital property requires [the] reversal of an alimony award[,] . . . the decision to award rehabilitative alimony is not considered during equitable distribution." *Lacoste v. Lacoste*, 197 So. 3d 897, 911 (¶51) (Miss. Ct. App. 2016) (citations and internal quotations omitted); *see also Hearn v. Hearn*, 191 So. 3d 129, 133-34 (¶¶15-18) (Miss. Ct. App. 2016) (affirming an award of rehabilitative alimony even though the issue of the equitable distribution of marital assets was reversed and remanded). The purpose of rehabilitative alimony is to provide the former spouse an opportunity to enter the work force and prevent the party from becoming destitute while searching for employment. *Lacoste*, 197 So. 3d at 911 (¶51).

¶39. We find the chancellor's award of rehabilitative alimony is supported by the evidence. As noted in the court's order, Jennifer had been out of the workforce for several years to raise the couple's minor children. Furthermore, her former profession as a flight attendant would require travel; so Jennifer would be unable to return to her former job and would require training for a new career.[13] This issue is without merit.

> ## V. Whether the chancery court erred in awarding Jennifer attorney's fees.

¶40. In its decision to award Jennifer attorney's fees, the chancery court concluded: "After

---

[13] Jennifer testified she was working toward obtaining a real-estate license.

considering the *McKee* factors and the fact that [Jennifer] has no ability to pay her attorney fees without liquidating some of the assets awarded to her herein, . . . an award of attorney fees in the amount of $15,000 is appropriate." Robert was awarded $10,000 in attorney's fees due to Jennifer's contempt in denying him his court-ordered visitation and telephone contact with the children. Robert contends that the court's decision to award Jennifer attorney's fees was inequitable as he also would be forced to liquidate assets to pay her attorney's fees. He further asserts the chancery court erred in failing to conduct an on-the-record analysis of the factors outlined in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). Those factors are:

> [T]he relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, . . . the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*Id.*

¶41.    A chancery court's decision to award attorney's fees is discretionary. *Mitchell v. Mitchell*, 823 So. 2d 568, 573 (¶21) (Miss. Ct. App. 2002) (citing *Grogan v. Grogan*, 641 So. 2d 734, 744 (Miss. 1994)). Attorney's fees are justified when equity suggests "one party should assist the other, and the other party is unable to pay." *Rodriguez v. Rodriguez*, 2 So. 3d 720, 732 (¶43) (Miss. Ct. App. 2009) (quoting *Haney v. Haney*, 907 So. 2d 948, 957 (¶41) (Miss. 2005)). "An inability to pay could be created if one party would be forced to liquidate a portion of [his] retirement or savings accounts in order to pay attorneys' fees." *Id.* (citing *Wells v. Wells*, 800 So. 2d 1239, 1246 (¶¶16-17) (Miss. Ct. App. 2001)).

19

¶42. Robert contends: "It is hardly equitable that Jennifer should not be required to liquidate her assets to pay her own fees when she received the majority of the assets, but Robert should liquidate his to pay her fees for her." While we find no abuse of discretion in the chancery court's determination that Jennifer should be awarded some attorney's fees as she would be forced to liquidate assets to pay her fees, since both parties were found in contempt, we do find it was an abuse of the court's discretion not to likewise discuss whether Robert would be forced to liquidate his assets in order to pay Jennifer's attorney's fees. Under the circumstances of this case, and since the chancery court failed to make detailed findings pursuant to the *McKee* factors, we reverse and remand for further findings.

**VI.    Whether the chancery court erred in awarding payment of temporary support in excess of Robert's monthly income and in refusing to credit Robert any of his temporary-support payments.**

¶43. Robert argues that because he lacked the financial ability to pay the court-ordered temporary alimony of $3,000 a month, he should not have been found in contempt of the court's order. He cites *Davis v. Davis*, 268 So. 2d 913, 916 (Miss. 1972), in which the supreme court reversed a finding of contempt because the husband was left with only $85 a month after paying the temporary support and did not have the ability to comply with the court order absent being a "financial genius or magician."[14]

¶44. In determining whether a party is in contempt, "[t]he chancellor has substantial

---

[14] Jennifer responds that had Robert not hired an "expensive out-of-state attorney" to represent him, he could have managed his funds to meet his temporary-support obligations. But, Robert clarifies that his attorney was located in Mississippi during the majority of the proceedings and only moved to Texas just before trial. We agree with Robert that Jennifer's argument is "irrelevant and inappropriate."

discretion." *Watkins v. Watkins*, 942 So. 2d 224, 230 (¶20) (Miss. Ct. App. 2006). "[W]e will not reverse the chancellor's decision unless it is manifestly erroneous." *Id*. In its order, the chancery court noted that Robert's Rule 8.05 financial form listed his monthly adjusted gross income as $9,093. While the obligation to pay temporary alimony, temporary child support, and the mortgage on the marital home certainly necessitated that Robert had to budget carefully his monthly income, those obligations did not "far exceed[]" his monthly income as he claims, or leave Robert with little to no money to live, as in *Davis*.[15] At trial, the chancellor told Robert to start paying temporary alimony as ordered and admonished him:

> If you have to let something else go, you [have] got to let something else go. . . . I consider a lot of times people who, you know, are having financial problems and can't pay it, but they pay something. "I couldn't pay it all, but I paid something." That makes me know that you are trying. You just didn't do anything.

We find no error in the court's finding of contempt; nor do we find the order by the court to pay $1,000 a month until the arrearage is satisfied to be unreasonable or excessive.

**CONCLUSION**

¶45. As the chancellor (1) failed to make specific findings why Robert should pay private-school tuition in excess of the statutory guidelines for child support; (2) failed to specifically address the *McKee* factors and whether Robert would be forced to liquidate assets to pay Jennifer's attorney's fees; and (3) erred in the equitable distribution of the marital assets, we reverse and remand on these issues. Regarding the remaining issues, we affirm the court's

---

[15] There was evidence of Robert's excessive credit-card debt, approximately $70,000 according to his testimony, and counsel for Jennifer noted that some expenses were for items such as a gym membership, dinners, and gifts from a jewelry store.

findings.

**¶46.    AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CONCUR.  GREENLEE, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.  WILSON, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.  FAIR, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND WESTBROOKS, JJ.; WILSON, J., JOINS IN PART.  TINDELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, J.**

**FAIR, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶47.    Jennifer and Robert Baumbach were married for eleven years.  During that time, they had two children, and Jennifer quit her job as a flight attendant to stay home with them.  She could not return to that line of work after the divorce, and she had poor employment prospects otherwise; while her husband earned more than $200,000 per year as an airline pilot and military retiree.  The chancellor did give Jennifer a lopsided share of the meager marital estate and generous temporary support, but these awards clearly were calculated to eliminate the need for periodic alimony.

¶48.    The majority reverses the chancellor's judgment on several sub-issues for further findings of fact.  The reason for requiring findings of fact and conclusions of law as to the various factor tests is to allow the reviewing court to know why the chancellor did what she did and to ensure that the chancellor considered all the relevant facts and employed the correct legal standard in reaching her decision.[16]  In my opinion, those requirements are met if the chancellor's twenty-four-page judgment is read as a whole.  I would affirm the

---

[16]  *See Sandlin v. Sandlin*, 699 So. 2d 1198, 1203-04 (Miss. 1997).

22

judgment in full, and so I respectfully dissent.

### 1. Equitable Distribution

¶49. The majority concludes that the chancellor's division of the marital property and debts was not equitable. But "[i]t is well settled that an equitable division of property does not necessarily mean an equal division of property." *Carney v. Carney*, 201 So. 3d 432, 440 (¶27) (Miss. 2016) (quoting *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994)). Given that Jennifer was not awarded periodic alimony, I see no abuse of discretion in the assignment of marital debts or in the orders that Robert pay mortgage on the marital home and split the proceeds from its eventual sale with Jennifer. "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994) (citation omitted). "[T]he chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." *Id*.

¶50. The chancellor explained that Jennifer had been a stay-at-home mother and would be unable to resume her prior occupation. She relied on Robert's implicit promise to support her not just during the time she is actually raising the children, but over the course of her life, given that their decision for her to stay home with the children resulted in a lifetime of reduced earnings. Accordingly, the chancellor awarded Jennifer rehabilitative alimony to allow her time to find a new job and more of the marital estate to allow Jennifer to maintain her standard of living despite the loss of her husband's income upon which she depended.

23

The chancellor further held that "[t]he marital property needs to be divided to eliminate periodic [alimony] payments and to avoid friction between the parties." *See id.* at 928. Respectfully, I disagree with the majority's characterization of this statement as too "broad" and "non-specific," as the chancellor's intent was clear when considered alongside her discussion of the *Armstrong* factors[17]; the chancellor discussed the assets, liabilities, earnings, and earning potential of the parties at some length. In my judgment, the chancellor's reason for the award is clear, rational, and supported by the evidence.

¶51.    At the time of the divorce, Robert earned more than $200,000 per year while Jennifer had no income and poor prospects of future employment. The property division is indeed lopsided, but I would emphasize that despite the fact that Robert and Jennifer owned a substantial amount of property, the net value of the marital estate was almost zero. The most important marital "assets" were investment properties located in Florida that had a net negative value of approximately $350,000. The chancellor had to do something with these properties, and the testimony at trial suggested that Robert had taken a much more active role in their acquisition and management than Jennifer had. But these properties were not the albatross Robert suggests in his brief; they produced income that mostly paid for the debt service. Only Robert had the means to maintain the properties when the rental income fell short, as it sometimes did. And while the properties had negative net values at the time of the divorce, they would eventually be saleable after the debt is paid down (or if the properties appreciate in the future).

---

[17] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

24

¶52. As to the particular issue of the division of the equity in the marital home after it is sold, the chancellor ordered that it would be split equally between the parties. Obviously, this benefitted Jennifer, as Robert would be paying the mortgage for up to eleven years before the sale occurs. The majority would find this to be reversible error, but it is apparent to me that the chancellor intended this result, as the marital estate was otherwise inadequate to eliminate the need for alimony. And given the immediate demands on Robert's income following the divorce, he also benefitted from the chancellor's decision to structure the award this way.

¶53. I would also note that Robert's obligations are temporary and mostly short-lived. The award of rehabilitative alimony was for just three years, and Robert's discretionary income would gradually increase as the marital debts are paid off, the children graduate from school, and the marital home is sold. I concede that his obligations are initially onerous, but they are front loaded by design and not beyond his ability to pay. Property division is entrusted to the sound discretion of the chancery court and should not be disturbed unless that discretion has been abused. *Berryman v. Berryman*, 907 So. 2d 944, 947-48 (¶14) (Miss. 2005). I cannot call this decision an abuse of discretion given that the needs of Jennifer and the children are immediate and *Ferguson* instructs that, if possible, property division should be effected to eliminate the need for periodic alimony. *See Ferguson*, 639 So. 2d at 928.

## 2. Attorney's Fees

¶54. Chancellors are instructed to apply the *McKee* factors in granting or denying attorney's fees. Here, the chancellor stated that she had considered the *McKee* factors in

reaching her decision, though she did not expressly list the factors or subdivide her analysis between them. But where there is substantial evidence in the record supporting the chancellor's award of attorneys' fees, the omission of specific *McKee* findings cannot be deemed reversible error. *See Varner v. Varner*, 666 So. 2d 493, 498 (Miss. 1995). The *McKee* factors include:

> (1) relative financial ability of the parties; (2) the skill and standing of the attorney employed, (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case.

*Chesney v. Chesney*, 849 So. 2d 860, 862-63 (¶10) (Miss. 2002) (citing *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)).

¶55. The attorney's fee award to Jennifer was $15,000, substantially less than she requested. Thus, on appeal, Robert does not take issue with the chancellor's decision on six of the seven factors; the only factor he challenges is the relative financial ability of the parties. The majority concedes that Jennifer is unable to pay her attorney's fees without liquidating assets, but it would remand for the chancellor to "discuss whether Robert would [likewise] be forced to liquidate his assets in order to pay Jennifer's attorney's fees."

¶56. The chancellor laid out both parties' incomes, earning potential, and assets at great length in her opinion and judgment and directly compared them more than once. I cannot agree that she failed to consider Robert's ability to pay $15,000 of Jennifer's attorney's fees, and I would affirm that aspect of the judgment as well.

    3.    **Child Support**

26

¶57. Even though Robert's income exceeded $200,000 per year, the chancellor accepted Robert's rather conservative claim that his adjusted gross income was just $109,116 per year or $9,093 per month. The chancellor ordered Robert to pay monthly child support of $1,817 and an additional $780 per month for private-school tuition, as the children had attended private school by agreement of both parties during the marriage.

¶58. Taken together, these awards amount to 28.5% of Robert's adjusted gross income. The majority would find this reversible error because it is a deviation from the statutory guidelines for two children, which is 20% of the adjusted gross income. *See* Miss. Code Ann. § 43-19-101 (Rev. 2015). But the statutory guidelines simply do not apply to this case because Robert's adjusted income exceeds $100,000. Rather, the question is whether application of the guidelines is reasonable. *See* Miss. Code Ann. § 43-19-101(4) (Rev. 2015). While the chancellor did not explicitly say that she found it unreasonable, she did find that Robert "has substantially more earning capacity" and "more opportunity to increase his savings and build up his retirement." Meanwhile, Jennifer "has been out of the workforce for 10 years so that she could stay home and take care of the children" and "is unable to return to her former job as a flight attendant and will need training to return to the workforce." During their marriage, the Baumbachs "lived an above average lifestyle" and "the children attend[ed] private school." As we recently said in *Ali v. Ali*, 232 So. 3d 770, 777 (¶21) (Miss. Ct. App. 2017), "the 'reasonable needs' of the child ought to be viewed at least as broadly as the reasonable needs of a wife seeking alimony." (Citation omitted). "It is not an abuse of discretion for the chancellor to consider the standard of living to which the

child is accustomed in deciding what amount of support is reasonable." *Id.*

¶59. Determinations of child support are intensely fact-sensitive, requiring "a knowledge special to the actual circumstances and to the individual child or children." *Thurman v. Thurman*, 559 So. 2d 1014, 1018 (Miss. 1990). The chancellor's opinion reflects that she ordered Robert to pay more because the girls had been attending private school and were accustomed to an "above average lifestyle." Both Robert and Jennifer had jointly determined the education the girls were receiving was in their best interest, and the chancellor found it should be continued, a decision which did not constitute an abuse of discretion in light of Robert's income and the resolution of other financial aspects of this divorce. Thus, I would affirm the chancellor's award of private-school tuition.

**Conclusion**

¶60. The chancery court's judgment in this case is somewhat unusual because the facts are somewhat unusual—Robert has a very high income, but the marital estate was encumbered by much debt and had very little net value. It may have been more straightforward for the chancellor to have just ordered periodic alimony, but she followed the supreme court's dictates in *Ferguson* and crafted a property settlement that, though lopsided, eliminated the need for alimony. *See Ferguson*, 639 So. 2d at 928. The award was not inequitable and was reached after applying the proper legal standard and making the required findings of fact. I would affirm the judgment in its entirety.

**CARLTON AND WESTBROOKS, JJ., JOIN THIS OPINION. WILSON, J., JOINS THIS OPINION IN PART.**

**TINDELL, J., CONCURRING IN PART AND DISSENTING IN PART:**

28

¶61. On the issues of rehabilitative alimony and temporary support, I must respectfully dissent. In October 2014, Robert was ordered to pay temporary alimony and child support and to make monthly payments on the parties' marital debts, which accounted for seventy-six percent of his net monthly income. In the chancellor's final judgment, Robert was ordered to pay another thirty-six months of rehabilitative alimony, with no apparent consideration for what he had already paid pursuant to the temporary order.

¶62. The Mississippi Supreme Court has long acknowledged that equitable distribution and alimony are intertwined and should be considered together to prevent inequity. *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994). Since other issues regarding equitable distribution are being remanded for the chancellor's consideration, I would remand the issue of rehabilitative alimony as well. I therefore concur in part and dissent in part from the majority's opinion.

**GREENLEE J., JOINS THIS OPINION.**