# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00840-COA

**ANDERSON WHITE, II**                                                          **APPELLANT**

**v.**

**BARBARA WHITE**                                                                  **APPELLEE**

DATE OF JUDGMENT:                04/17/2015
TRIAL JUDGE:                     HON. MARIE WILSON
COURT FROM WHICH APPEALED:       WARREN COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         B. BLAKE TELLER
                                 LAUREN ROBERTS CAPPAERT
ATTORNEYS FOR APPELLEE:          VATERRIA MCQUITTER MARTIN
                                 DESHUN TERRELL MARTIN
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:         GRANTED DIVORCE BASED ON CRUEL
                                 AND INHUMAN TREATMENT
DISPOSITION:                     AFFIRMED - 12/13/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    Anderson White II and Barbara White were married in July 2004. In December 2011, Barbara filed for a divorce in the Warren County Chancery Court based upon uncondoned adultery and habitual cruel and inhuman treatment. In December 2014, Barbara was granted a divorce on the ground of habitual cruel and inhuman treatment. As a result, Barbara was ultimately awarded two homes and one vehicle. On appeal, Anderson argues that: (1) the chancellor erred in finding that Barbara met the burden of proof required to obtain a divorce on the ground of habitual cruel and inhuman treatment; and (2) the chancellor erred in the

equitable division of the parties' property.  Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     On July 6, 2004, Anderson and Barbara were married.  The record reflects that on or around March 18, 2011, the parties separated, with no children being born or expected from their union.  Anderson owned A&A Bonding Company, a bail-bonding business.  Barbara was employed as an admission registrar with River Region Health System in Vicksburg, Mississippi; she also worked at Anderson's bail-bonding company as an office manager and agent.  At the time of the parties' marriage, Barbara owned a home at 204 Sherman Avenue in Vicksburg; the home was valued at $100,000 and possessed two mortgages.  Likewise, Anderson owned a home prior to and during the parties' marriage located at 401 Farmer Street in Vicksburg; the home was paid in full and valued at $46,120.

¶3.     The parties elected to live at Barbara's Sherman Avenue property, in which Barbara quitclaimed her interest to Anderson.  To obtain funds to build a marital home, the parties refinanced the Sherman Avenue property, with Anderson paying off the second mortgage.  The parties later sold the Sherman Avenue home for $100,000, and also secured a $50,000 loan on the Farmer Street property through refinancing.

¶4.     The parties were eventually able to build a marital home at 135 Memory Lane in Vicksburg, valued at $380,000 and possessing a mortgage balance of $180,000; this property was titled in Anderson's name, and served as the marital domicile from October 2006 until the present matter was commenced.  After moving into 135 Memory Lane, the parties built a house at 130 Memory Lane, which was valued at $226,300, paid in full, and also titled in

Anderson's name. The parties never occupied the 130 Memory Lane home.

¶5. In addition to the parties' homes, Anderson and Barbara obtained several different vehicles during their marriage—a 1993 Lexus 400 valued at $2,000; a 2005 Lexus SC430 valued at $10,000; a 2011 Lexus ES350 valued at $25,000; and a 2011 Lexus LS450 valued at $35,000. At the time of trial, Barbara possessed only the Lexus ES350. Following Barbara's departure from the marital home, Anderson acquired an additional 2013 Lexus LX570. The parties also possessed a joint debt from an account with Mid-South Lumber and Supply for a balance of $9,186.81, incurred during the construction of the parties' Memory Lane homes. The total amount of marital debt at the time of trial was $279,749.61.

¶6. The record reveals the parties were less than amicable with one another throughout the duration of their marriage. Among various instances of marital discord, the facts show Barbara was routinely displaced from the marital home, law-enforcement officers were repeatedly summoned, and Anderson discarded Barbara's personal belongings outside the home on more than one occasion. Two events, however, were of primary importance to the chancery court's findings. At trial, Barbara testified that in 2005, Anderson choked and struck her, resulting in a black eye, after Barbara failed to return home directly after completing an errand for Anderson. In response, Anderson denied striking Barbara, and further testified that he was unaware how Barbara incurred the injury. In 2009, there was a separate incident, which has been referred to as the "cocked gun" incident. Barbara testified that the events leading to this dispute stemmed from an argument the parties had over the shrimp and fish Barbara was preparing for dinner. Following the argument, Barbara, her

3

mother, and her sister all testified that Anderson angrily ran upstairs where they then heard a gun "cock" or "click." Barbara's mother, however, testified that she did not realize at that time the noise she heard was related to the use of a gun. Anderson admitted he owned many guns, arranged throughout the marital home, but claimed that the incident never occurred; Anderson's son, Anderson White III, also testified that Anderson never left the room where the argument took place. Law-enforcement officers were called after the alleged altercation, and Barbara did not stay at the marital home that evening, stating that Anderson told her "that if she did not leave, something bad would happen to her." Anderson admitted to serving Barbara with an eviction notice the following day, claiming to be the landlord and owner of the residence.

¶7.    These events, in conjunction with the entirety of the parties' marriage, prompted Barbara to file for a divorce in December 2011, asserting uncondoned adultery and habitual cruel and inhuman treatment. In 2008 and 2009, however, both parties had filed prior complaints for divorce in the chancery court, with Barbara filing for divorce in February 2008, and Anderson filing for divorce in June 2009. With the present matter pending, a January 2012 order was entered dismissing *with prejudice* both Anderson's 2009 complaint for divorce *and* Barbara's counterclaim. As such, Anderson argued that issues asserted in Barbara's counterclaim were precluded from consideration in the present matter, pursuant to Mississippi Rule of Civil Procedure 41; the chancellor, however, found otherwise. Citing to Mississippi Rule of Civil Procedure 60(a), the chancellor entered an order *sua sponte* stating that the January 2012 order should have dismissed Anderson's complaint *with*

*prejudice* and Barbara's counterclaim *without prejudice*, as the reasons for the January 2012 order were the failure of Anderson to prosecute, *and* to allow Barbara to proceed with her complaint filed in the instant matter, which was pending at the time of the January 2012 order.

¶8. In September 2014, the present matter went to trial, where the chancery court granted Barbara a divorce on the ground of habitual cruel and inhuman treatment. The chancery court ultimately awarded Barbara the homes located at 130 Memory Lane and 401 Farmer Street, as well as the Lexus ES350. Anderson was ultimately awarded the marital home located at 135 Memory Lane, as well as the Lexus 400, Lexus SC430, and Lexus LS450. The chancery court found each party equally responsible for the marital debt, totaling $279,749.61, with each party accountable for $139,874.80. After calculations were assessed from the total value of property each party was awarded, Barbara was left with a deficit of $125,580, rendering her responsible for $77,084.80 of the parties' debts. Lastly, the chancery court found that since neither party exhibited an inability to pay, the parties would be responsible for their own individual litigation expenses.

¶9. Aggrieved, Anderson now appeals, asserting that: (1) the chancellor erred in finding that Barbara met the burden of proof required to obtain a divorce on the ground of habitual cruel and inhuman treatment;[1] and (2) the chancellor erred in the equitable division of the parties' property. Finding no error, we affirm.

---

[1] Incorporated within this assignment of error is Anderson's argument that the chancellor erred in relying upon, and admitting into evidence, allegations made by Barbara in her 2009 counterclaim.

**STANDARD OF REVIEW**

¶10.    It is well settled that appellate courts are bound by a limited standard of review in domestic-relations matters. *See, e.g.*, *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994). The Mississippi Supreme Court has held that a chancellor's findings of fact, especially in divorce cases such as the instant case, "will generally not be overturned by this Court on appeal unless they are manifestly wrong." *Fancher v. Pell*, 831 So. 2d 1137, 1140 (¶15) (Miss. 2002) (citing *Nichols v. Tedder*, 547 So. 2d 766, 781 (Miss. 1989)). The chancellor must have been manifestly wrong or clearly erroneous, or have applied an erroneous legal standard for the findings to be overturned. *Montgomery v. Montgomery*, 759 So. 2d 1238, 1240 (¶5) (Miss. 2000). "In the case of a divorce decree, facts will be viewed 'in a light most favorable to the appellee.'" *G.B.W. v. E.R.W.*, 9 So. 3d 1200, 1204 (¶8) (Miss. Ct. App. 2009) (quoting *Bodne v. King*, 835 So. 2d 52, 57 (¶16) (Miss. 2003)). "For questions of law, our standard of review is de novo." *Shoffner v. Shoffner*, 909 So. 2d 1245, 1249 (¶11) (Miss. Ct. App. 2005).

**DISCUSSION**

**I.    Habitual Cruel and Inhuman Treatment**

¶11.    First, Anderson argues that the facts asserted by Barbara at trial do not rise to the level necessary to establish habitual cruel and inhuman treatment. In response, Barbara argues that this Court should do as the chancery court did, and review the acts not in isolation, but as a whole. Finding no error with the chancery court's analysis, we affirm the chancery court's judgment.

6

¶12.    In *Rakestraw v. Rakestraw*, 717 So. 2d 1284 (Miss. Ct. App. 1998), this Court

reiterated the long-held principle that:

> Habitual cruel and inhuman treatment may be established by a showing of
> conduct that either (1) endangers life, limb, or health, or creates a reasonable
> apprehension of such danger, rendering the relationship unsafe for the party
> seeking relief, or (2) is so unnatural and infamous as to make the marriage
> revolting to the non-offending spouse and render it impossible for that spouse
> to discharge the duties of marriage, thus destroying the basis for its
> continuance.

*Rakestraw*, 717 So. 2d at 1287 (¶8) (citing *Daigle v. Daigle*, 626 So. 2d 140, 144 (Miss.

1993)).  "[S]uch conduct must be habitual, that is, done so often, or continued so long, that

its recurrence may be reasonably expected whenever occasion or opportunity presents itself."

*Burnett v. Burnett*, 271 So. 2d 90, 92 (Miss. 1972).  "Although the cruel and inhuman

treatment usually must be shown to have been 'systematic and continuous,' a single incident

may provide grounds for divorce."  *Rakestraw*, 717 So. 2d at 1287 (¶8).  "While ordinarily

one act or an isolated incident will not establish a charge of habitual cruel and inhuman

treatment, one incident of personal violence may be of such a violent nature as to endanger

the life of the complainant spouse and be of sufficient gravity to establish the charge of

habitual cruel and inhuman treatment."  *McKee v. Flynt*, 630 So. 2d 44, 48 (Miss. 1993).

"[T]he charge 'means something more than unkindness or rudeness or mere incompatibility

or want of affection.'"  *Rakestraw*, 717 So. 2d at 1287 (¶8) (quoting *Daigle*, 626 So. 2d at

144).  Habitual cruel and inhuman treatment must be shown by a preponderance of the

evidence.  *Shavers v. Shavers*, 982 So. 2d 397, 403 (¶35) (Miss. 2008).

¶13.    "The party alleging cruel and inhuman treatment typically must corroborate the

testimony." *Id.* Nonetheless, "[c]orroborating evidence need not be sufficient in itself to establish habitual cruelty, but rather need only provide enough supporting facts for a court to conclude the plaintiff's testimony is true." *Smith v. Smith*, 90 So. 3d 1259, 1263 (¶12) (Miss. Ct. App. 2011) (citing *Jones v. Jones*, 43 So. 3d 465, 478 (¶30) (Miss. Ct. App. 2009) (quoting Deborah H. Bell*, Bell on Mississippi Family Law* § 4.02[8][d] (2005))).

¶14. On appeal, Anderson asserts that the incidents presented in testimony and outlined by the chancery court in its judgment do not show a continuous pattern or course of habitual cruel and inhuman conduct by Anderson toward Barbara. Specifically, Anderson argues that Barbara failed to sufficiently corroborate her testimony regarding the black eye she received, as well as the events surrounding the cocked-gun incident. The chancery court, however, found otherwise, considering the actions described not in isolation, but as a whole. In doing so, the chancellor determined that "[a]s a whole [Anderson]'s conduct has been habitually mean and heartless[,] . . . exhibit[ing] a pattern or a course of conduct which as a whole amounts to cruelty."

¶15. Regarding the black-eye incident, Anderson denied hitting Barbara, but admitted that Barbara did, in fact, possess the alleged injury. Anderson further testified, however, that he was unaware of how Barbara received the injury. In reviewing Anderson's testimony, the chancellor specifically noted in her final judgment that Anderson "nonchalantly testified" regarding this incident, and that "[i]t would seem to the court that a husband would make it his business to know how his wife received a black eye." In relation to the 2009 cocked-gun incident, Barbara, her mother, and her sister all testified that after an argument between the

parties, Anderson angrily ran upstairs, where they then heard a gun "cock" or "click." Barbara's mother did, however, testify that she did not realize at that time the noise she heard related to the use of a gun. Anderson admitted he owned many guns, but denied that the incident ever occurred; in support, Anderson III also testified that Anderson did not leave the room where the argument took place.

¶16. Upon review, this Court is reminded that "[t]he chancellor is vested with the sole authority and responsibility to assess witness credibility as no jury is present." *Jones*, 43 So. 3d at 471 (¶10). The chancellor alone "hears the testimony and sees the demeanor of the witnesses." *Boutwell v. Boutwell*, 829 So. 2d 1216, 1220 (¶16) (Miss. 2002). This Court "cannot, and will not, reweigh the evidence or reconsider the credibility of the witnesses." *Hammers v. Hammers*, 890 So. 2d 944, 951 (¶19) (Miss. Ct. App. 2004). As such, the chancery court found "[t]he black eye and the gun incidents gave [Barbara] a reasonable apprehension of danger to her life, limb or health," causing her "to be nervous and scared," as Anderson's conduct "occurred continually throughout the marriage and its recurrence [could] be reasonably expected whenever occasion or opportunity present[ed] itself." In light of the corroborating testimony provided by Barbara's witnesses, as well as that of Anderson himself, we find the record contains more than sufficient evidence to support the chancery court's grant of a divorce based upon habitual cruel and inhuman treatment. *See Gatlin v. Gatlin*, 234 So. 2d 634, 635 (Miss. 1970) (holding testimony of the defendant may also provide corroboration of the plaintiff's testimony).

¶17. As a corollary to his primary argument, Anderson asserts that the chancery court

committed manifest error in relying upon, and admitting into evidence, certain allegations contained in Barbara's 2009 counterclaim. Pursuant to the January 9, 2012 order dismissing with prejudice Anderson's 2009 complaint for divorce and Barbara's counterclaim, Anderson argues that Barbara was precluded from presenting any evidence of any acts that occurred prior to January 9, 2012. The chancery court disagreed, however, citing to Mississippi Rule of Civil Procedure 60, which provides a vehicle for relief from a judgment or order. *See* M.R.C.P. 60. In particular, Rule 60(a) provides for relief from a clerical mistake "arising from oversight or omission," and states that such a mistake "may be corrected at any time by the court's own initiative or upon a motion of any party . . . ." *Id.* In addition, Rule 60(a) may be used "to correct an order that failed accurately to reflect the judge's original decision." *Scott v. Scott*, 115 So. 3d 847, 850 (¶8) (Miss. Ct. App. 2012). This Court reviews a Rule 60 motion for relief from judgment under an abuse-of-discretion standard. *Tyler v. Auto. Fin. Co.*, 113 So. 3d 1236, 1239 (¶9) (Miss. 2013).

¶18. Upon review of the record, we find the chancery court did not abuse its discretion in the Rule 60(a) amending of its January 9, 2012 order. Barbara's complaint for divorce in the present matter alleged acts of cruelty that had been ongoing "for the past five years." Reviewing that the reasons given for the January 2012 order were the failure of Anderson to prosecute, *and* to allow Barbara to proceed with her complaint filed in the instant matter, it is clear the order did not accurately reflect the chancery court's intention. As the chancery court properly found, it is clear from the complaint in the instant case that Barbara intended to present evidence of acts occurring at least five years prior to the filing of the instant case's

10

complaint on December 7, 2011. As a result, we find the chancellor's dismissal of Anderson's 2009 complaint *with prejudice* and Barbara's 2009 counterclaim *without prejudice* was not an abuse of discretion under Rule 60(a). This issue is without merit.

¶19. Viewing the evidence in a light most favorable to Barbara, and viewing the record as a whole, we find substantial evidence supporting the chancellor's decision to grant Barbara a divorce on the ground of habitual cruel and inhuman treatment. As such, we affirm the chancery court's judgment of divorce.

## II. Division of Marital Assets

¶20. In the alternative, Anderson argues on appeal that he is entitled to the homes located at 401 Farmer Street and 130 Memory Lane, which the chancery court awarded to Barbara. With regard to division and distribution of property, we maintain the objective of "a fair division based upon the facts of the case[.]" *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997) (referencing *Ferguson*, 639 So. 2d at 929).

¶21. In general, when dividing and distributing property, courts employ the following factors, which were laid out in *Ferguson*, 639 So. 2d at 928:

(1) Substantial contribution to the accumulation of the property . . . [;]

(2) The degree to which each spouse has expended, withdrawn[,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree[,] or otherwise[;]

(3) The market value and the emotional value of the assets subject to distribution[;]

(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter

11

vivos gift by or to an individual spouse;

(5)     Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6)     The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

(7)     The needs of the parties for financial security with due regard to the combination of assets, income[,] and earning capacity; and,

(8)     Any other factor which in equity should be considered.

"In reviewing a chancellor's judgment, [the appellate court] does not conduct a *Ferguson* analysis anew, but reviews the judgment to ensure that the chancellor followed the appropriate standards and did not abuse h[er] discretion." *Phillips v. Phillips*, 904 So. 2d 999, 1001 (¶8) (Miss. 2004).

¶22.    Anderson's primary argument is that Barbara made no contribution to the properties and, thus, should not have been awarded the homes located at 401 Farmer Street and 130 Memory Lane. Anderson further challenges the chancery court's finding that Barbara fulfilled the role of homemaker during the parties' marriage. In analyzing his claim, we look to the chancery court's ruling and order to determine whether an appropriate analysis was conducted by the chancellor.

¶23.    At the outset, the chancellor classified the parties' marital assets as either marital or nonmarital, as set out in *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994). For purposes of a divorce proceeding, the definition of marital property is "any and all property acquired or accumulated during the marriage . . . . We assume for divorce purposes that the contributions

and efforts of the marital partners, whether economic, domestic[,] or otherwise[,] are of equal value." *Hemsley*, 639 So. 2d at 915. "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Id*. at 914. From the parties' testimony, the chancery court found that all of the parties' real and personal property was acquired, accumulated, or used for the benefit of the family during the marriage, and thus, deemed marital property subject to equitable distribution.

¶24.    Having satisfactorily divided their household furnishings and personal property upon Barbara's departure from the marital home in 2011, the only remaining items left in dispute were the following homes and vehicles: 401 Farmer Street; 130 Memory Lane; 135 Memory Lane; 1993 Lexus 400; 2005 Lexus SC430; 2011 Lexus LS450; and 2011 Lexus ES350. Through application of the *Ferguson* factors, the chancellor awarded Barbara the homes located at 401 Farmer Street and 130 Memory Lane, as well as the 1993 Lexus 400 and 2011 Lexus ES350. The chancellor awarded Anderson the marital home located at 135 Memory Lane, as well as the 2005 Lexus SC430 and 2011 Lexus LS450. Thus, the chancery court technically awarded Barbara $299,420 in marital assets, and Anderson $425,000. Aggrieved, Anderson filed a motion for reconsideration, arguing that the 1993 Lexus 400 was not considered marital property, and that Barbara was not entitled to any real property. Upon consideration, the chancellor found in favor of Anderson with respect to the 1993 Lexus 400 only. Finding the parties equally responsible for their marital debt, totaling $279,749.61,

13

each party was held accountable for $139,874.80. As Barbara's original award of marital assets was $125,580 less than Anderson's award, the chancellor found her responsible for $77,084.80 of the marital debt.

¶25. On appeal, Anderson asserts the chancellor erred in her *Ferguson* analysis by finding Barbara fulfilled the marital role of homemaker, and by making her awards of real property. Reviewing the record, however, there is sufficient evidence to support the chancery court's findings regarding Barbara's role during the marriage. To that effect, Anderson III testified that Barbara prepared meals, cleaned the marital home, and took Anderson III shopping. Furthermore, Anderson III testified that he referred to Barbara as his "mother" while the parties were still married. As such, we find no error with the chancellor's determination that Barbara satisfied the role of homemaker.

¶26. Regarding Anderson's assertion that Barbara was not entitled to the homes located at 401 Farmer Street and 130 Memory Lane, we find the record devoid of any clear error requiring reversal. The chancery court found that all of the real property and vehicles at issue had emotional value to Anderson. The chancellor likewise found the home at 130 Memory Lane and the 2011 Lexus ES350 had emotional value to Barbara. As this Court will not conduct a *Ferguson* analysis anew, we find the chancellor followed the appropriate standards and did not abuse her discretion. *See Phillips*, 904 So. 2d at 1001 (¶8).

¶27. In sum, the chancery court cited the *Ferguson* factors and the benchmark *Hemsley* case in its analysis of the parties' marital assets. To overturn the chancery court's findings would require the presence of an abuse of discretion or an improper application of the law

on the part of the chancery court. "Because the chancellor applied the correct legal criteria and determined which criteria [s]he considered applicable, it simply cannot be said that the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." *Sproles v. Sproles*, 782 So. 2d 742, 748-49 (¶25) (Miss. 2001). These issues are without merit.

## CONCLUSION

¶28. Upon review, we find sufficient evidence supporting the chancery court's grant of a divorce on the ground of habitual cruel and inhuman treatment. We likewise find no error with the chancery court's equitable division of marital assets. As such, we affirm.

¶29. **THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**