# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01080-COA

## CONSOLIDATED WITH

## NO. 2018-CA-01416-COA

**ALVIN JOHNSON, SR.**                                          **APPELLANT**

**v.**

**ANNA JOHNSON**                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/27/2021 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | MARK A. CHINN JANEAH RAY SAKALAUKUS |
| ATTORNEYS FOR APPELLEE: | FELECIA PERKINS JESSICA NICOLE AYERS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 04/18/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This matter was previously before this Court in appellate case number 2018-CA-01416-COA. We affirmed the irreconcilable differences divorce of Anna and Alvin Johnson and other issues but reversed and remanded the case for the chancery court to apply the *Ferguson* factors to its provision for equitable distribution and for any award of lump-sum

alimony.[1]  *Johnson v. Johnson*, 297 So. 3d 342 (Miss. Ct. App. 2020).  On remand, the chancery court applied the factors and awarded Alvin possession and ownership of the marital domicile.  The court required Alvin to pay Anna 45% of his military pension retroactive to the chancery court's 2018 order.  The chancery court ordered Alvin to pay an additional $67,685 in lump-sum alimony as part of the equitable distribution.  The chancery court also awarded Anna 45% of Alvin's military survivors benefits.

¶2.     On appeal, Alvin alleges that (1) the chancery court erred by awarding Anna lump-sum alimony, (2) the chancery court erred by awarding Anna 45% of his military pension, and (3) the chancery court did not have the authority to retroactively award Anna 45% of Alvin's military pension.  We affirm the chancery court's rulings as to these issues; however, we reverse and render the percentage of Alvin's survivors benefits awarded to Anna.

### FACTS AND PROCEDURAL HISTORY

¶3.     The facts and procedural history of this case are found in our previous opinion in *Johnson*, 297 So. 3d at 343-45 (¶¶2-10):

> Alvin and Anna met in 1990 and married in 1992. Anna resided in Alvin's home from 1990 until they were officially divorced in 2018. At the time of marriage, Alvin and Anna worked at the Delphi Packard Electric plant. Alvin retired from the plant in 2006 after thirty-one years of service. Anna continued to work there until the plant closed in 2009. Alvin and Anna had two children during their marriage, but Alvin also had four children prior to their marriage.
>
> Alvin opened a joint checking account with his mother in 1976. Anna was added to that account sometime after they married in 1992. With this account, Alvin purchased his first home at the age of twenty-four and owned the home for approximately eleven years prior to his marriage. The home was

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

refinanced shortly after Alvin and Anna's marriage. The refinance resulted in a ten-year mortgage, which was paid off using the joint checking account. Improvements made to the home also were paid from the joint checking account, but it is disputed how much each individual paid for the additions to the home. The parties also dispute the amount paid by each individual regarding the home's general upkeep.

In 2004, Alvin's brother purchased a rental home near Alvin and Anna's marital home. Two years after that, Alvin's brother executed a quitclaim deed conveying the rental home to himself and Alvin. The chancellor found, but the parties dispute, that Alvin used marital funds to make repairs to the rental home and pay for its upkeep. Alvin concedes that he received rental income from the property in 2013 and 2014.

In addition to these two homes, Alvin and Anna possess various retirement accounts. Both Alvin and Anna received a severance and pension after they departed from Delphi Electric Packard. Alvin also receives military benefits from his time spent in the National Guard. He also has an additional 401(k) plan that he claims he started in 1981, and he receives a second pension from time spent working at General Motors (before his marriage). Anna has an individual retirement account, which she rolled over from her personal savings after she left Delphi Packard Electric. After the plant's closure, Anna started to work for the Department of Public Safety and accumulated funds in a Public Employment Retirement System account. In 2014, Anna moved from her position with the State and began working at the Nissan plant. At Nissan, Anna accumulates funds into a 401(k) plan.

Alvin and Anna separated in 2013. Alvin claims that Anna was the cause of the separation. He accuses Anna of having an affair.

In 2014, Alvin's family friend passed away. The friend named Alvin as her personal representative and left a portion of her estate to him. The parties also dispute the assets that Alvin acquired as a result of that estate.

On September 6, 2016, Anna filed a complaint for divorce with a request for temporary relief. Alvin answered and counterclaimed for divorce on the grounds of adultery and habitual cruel and inhuman treatment. In the alternative, Alvin requested a divorce on the ground of irreconcilable differences. The chancery court held a hearing on October 18, 2016, to determine whether Anna was entitled to temporary relief as she sought exclusive use and possession of the marital home, temporary child support, and child custody. A temporary order was entered on August 29, 2017.

On May 2, 2018, Alvin and Anna filed a "Joint Motion And Consent To Trial And Divorce On The Ground of Irreconcilable Differences" pursuant to Mississippi Code Annotated section 93-5-2(3) (Rev. 2013). The chancellor thereafter signed an order granting that motion on May 3, 2018. In the motion, the parties stipulated to the division of various personal properties. They also submitted the following issues to the court for its determination: (1) "the disposition of the marital domicile"; (2) "the value of the marital domicile"; (3) "the percentage of equity . . . awarded to each party from the marital domicile"; (4) "should both parties continue to reside in the marital domicile until it is sold"; (5) "whether the rental home is a marital asset"; (6) "the value of the rental home"; (7) "the disposition of the rental home and what percentage of equity awarded to each party"; (8) "the division of the parties' pensions and retirement accounts, including Alvin's military benefits"; (9) "whether Anna is entitled to Alvin's military survivors' benefits"; (10) "whether Alvin owes Anna for their daughter's educational costs"; (11) alimony, if any; (12) attorney's fees; and (13) rights to a laptop.

The trial began on May 3, 2018. At trial, the chancery court noted that two "additional stipulations" were reached by the parties. The first concerned the value of the marital home (issue 2), which the parties "agreed to stipulate" was valued at $130,000. The second stipulation regarded educational costs owed by Alvin (issue 10). In that stipulation, the parties "agreed" that Alvin would pay $20,000 to Anna for their daughter's educational costs. The parties re-appeared on May 14, 2018, and again via telephonic conference on June 12, 2018. On July 9, 2018, the chancellor entered an order distributing the marital estate. Alvin then timely filed a motion to amend the judgment or for a new trial, and Anna filed a motion for clarification. As a result, the chancery court entered a second order on September 28, 2018, amending its July 9 order.

(Paragraph numbering omitted). Alvin appealed the September 2018 order. *Id.* This Court affirmed the chancery court in part and reversed and remanded in part, remanding for the chancellor to conduct a *Ferguson* analysis on the issues submitted for equitable distribution and address the question of lump-sum alimony. *Id*. at 347, 349 (¶¶18, 28).

¶4.     On remand, the chancery court ordered three modifications on December 7, 2020; May 6, 2021; and August 27, 2021. In the December 7 order, the chancery court made its findings under *Ferguson* for the issues submitted for equitable distribution:

### (1) The Disposition of the Marital Domicile

¶5. The chancery court found that the marital domicile was a marital asset. The house and its upkeep were paid for by Alvin and Anna's joint checking account. Both parties lived in the home for twenty-eight years with their children. Anna made direct economic contributions to the acquisition of the house through money she put into the joint checking account. However, when she left the marital home to live with her mother, her desire to retain the domicile was put in question. Accordingly, the chancery court found that Anna was due equity in the home but Alvin would retain use, possession, and ownership of the home. Anna was to convey her interest to Alvin after Alvin's payment of the amounts awarded to her in the order.

### (2) Value of the Marital Domicile

¶6. The chancery court determined that the market value of the marital domicile was $130,000. Though finding that both Alvin and Anna had significant emotional value in the home, the court found that Alvin had the greater claim as it was his first home that he purchased as a young adult and that he lived there for thirty-seven years after its purchase. The chancery court awarded him possession and use of the domicile.

### (3) Percentage of Equity Awarded to Each Party from the Marital Domicile

¶7. The chancery court determined that Alvin should retain more equity in the home than Anna because he lived in the home alone for nine years. Accordingly, the chancery court found that Alvin shall retain $30,919 of the equity. That left $99,081 remaining to be divided between the two parties. Therefore, the chancery court found Alvin owes Anna her equity

5

share of $49,540.50.

**(4)       Domicile, Utilities, and Other Household Bills**

¶8.       The chancery court stated that the domicile shall not be sold.  Anna was ordered to vacate the home "as soon as practicable after entry of this amended judgment."  All bills, utilities, and other expenses would be Alvin's sole responsibility once Anna vacated the domicile.

**(5)       Rental House as a Marital Asset**

¶9.       The chancery court found that the rental house was a marital asset.  Alvin owned one-half of the rental with his brother and was responsible for the upkeep of the rental.  He made repairs and used marital funds to do so.  Anna made indirect economic contributions to acquire the property.  Therefore, the court granted Anna one-half of Alvin's one-half share, or one-fourth of the value of the rental house.

**(6)       Value of Rental House**

¶10.     The chancery court determined the market value of the rental house as $93,500.

**(7)       Disposition of the Rental House and Percentage of Equity Awarded to Each Party**

¶11.     The chancery court found that Anna was entitled to receive $23,375 as one-fourth of the total market value of the house.

**(8)       Division of the Parties' Pensions and Retirement Accounts**

¶12.     The chancery court denied both parties an interest in the other's 401(k) retirement plans.  "Neither party presented sufficient evidence to establish how much was contributed to Alvin's pension and retirement prior to the marriage (a time period of approximately nine

6

(9) years)." The court also found that Alvin was eight years older than Anna and suffered from several medical conditions that do not allow him to work. Meanwhile, the court noted that Anna is still employed and earning $73,000 per year while contributing to her retirement.

¶13. However, the chancery court did determine that Anna was entitled to 45% of Alvin's military pension. The chancery court found that Anna had been the steward of the home and caretaker for the children for twenty-five out of twenty-eight years of Alvin's service. That twenty-five years amounted to 89.29% of his time in service. The chancery court found that Anna was entitled to half of 89.29%, being 44.65%, which the chancery court rounded up to 45%. Alvin was ordered to sign whatever documentation necessary to ensure Anna received 45% of his military pension.

### (9) Alvin's Military Survivors Benefits

¶14. The chancery court found that Anna is entitled to 45% of the 55% of the annuity payable upon Alvin's death. The chancery court ordered the remaining 10% shall go to Alvin's current designated beneficiary, his sister. Alvin was ordered to continue to elect the survivors benefit plan that pays 55% of his annuity base amount. Alvin was ordered to sign whatever documentation was necessary to ensure this happened.

### (10) Ashley Johnson's Educational Costs

¶15. The parties stipulated that Alvin pay $20,000 toward their daughter Ashley's educational costs and this Court previously upheld the stipulation. *Johnson*, 297 So. 3d at 349 (¶25).

### (11) Alimony

¶16. The chancery court found that neither party was entitled to alimony. During the trial, the chancellor stated, "[t]he [c]ourt is denying alimony. There was a request. Each party requested the other pay alimony. Based on their separate estates and their work history, the [c]ourt would deny alimony." The chancery court clarified this finding in its May 6 order by stating that neither party is entitled to periodic, rehabilitative, or reimbursement alimony.

### (12) Attorney's Fees

¶17. The chancery court determined both parties are responsible for their own attorney's fees.

### (13) Anna's Laptop

¶18. The chancery court found that Alvin made an inter vivos gift of the laptop to Anna, meaning it is not subject to distribution under *Ferguson*. Anna had possession of the laptop. Therefore, the chancery court found that Anna shall retain possession and ownership of the laptop.

¶19. Alvin filed his "Motion to Alter or Amend Judgment or for a New Trial" in December 2020. After Anna filed her response, the court entered another order on May 6, 2021, clarifying its ruling and denying Alvin's request for a new trial. In this order, the chancery court included an additional award of $67,685 of lump-sum alimony to Anna to address the disparities in the parties' total estates. Anna filed a motion asking for reconsideration or clarification of the May 6 order, to which Alvin responded. The chancery court entered its final order on August 27, 2021, clarifying the May 6, 2021 order. In addition, this order awarded Anna the 45% of Alvin's military pension retroactive to the date of the original

order in September 2018. Alvin appealed. Subsequently, Alvin filed a motion to consolidate this appeal with his previous one in appellate case number 2018-CA-01416-COA for record purposes, as the financial statements in the previous record are integral to the chancery court's final judgment, which is the subject of the new appeal. The Mississippi Supreme Court granted the motion consolidating the two appeals.

## STANDARD OF REVIEW

¶20.   "It is well settled that appellate courts are bound by a limited standard of review in domestic-relations matters." *White v. White*, 208 So. 3d 587, 592 (¶10) (Miss. Ct. App. 2016). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Stroh v. Stroh*, 221 So. 3d 399, 406 (¶17) (Miss. Ct. App. 2017). However, we review questions of law de novo. *Id.*

## DISCUSSION

### I.    Lump-Sum Alimony

¶21.   Alvin alleges that the chancery court committed reversible error by awarding Anna an additional $67,685 in lump sum alimony as part of the property distribution. Specifically, he argues that the chancery court should have made the determination under an *Armstrong* analysis instead of *Ferguson*.[2] Furthermore, he argues that the court erred by determining that there was a disparity between the estates following the equitable division of marital assets.

---

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

¶22.   "[T]he seminal Mississippi case regarding equitable division of marital property is *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994)." *Guy v. Guy*, 736 So. 2d 1042, 1043 (¶7) (Miss. 1999).  The non-exclusive list of factors in *Ferguson* includes:

(1)     Substantial contribution to the accumulation of the property.  Factors to be considered in determining contribution are as follows:

   a.    Direct or indirect economic contribution to the acquisition of the property;

   b.    Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

   c.    Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

(2)     The degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise

(3)     The market value and the emotional value of the assets subject to distribution.

(4)     The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

(5)     Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6)     The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

(7)     The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and

10

(8)     Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928. "If lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the *Ferguson* factors." *Davenport v. Davenport*, 156 So. 3d 231, 241 (¶34) (Miss. 2014). "However, if the alimony, lump-sum or otherwise, is awarded *subsequent to* the equitable distribution of the marital assets, then chancellors must conduct their analysis under the *Armstrong* factors." *Id.*

¶23.    The chancery court explained in its May 6 order that it used "lump sum alimony" as a tool to assist in the distribution of the marital assets. Alvin's individual retirement, checking, and savings accounts were much greater than Anna's accounts, with Alvin's total assets equaling about $576,000, and Anna's total assets equaling about $294,400. In addition, Alvin was granted ownership and possession of the marital domicile while Anna was awarded her equity in the home and ordered to vacate. The chancery court took into account that the marital property would likely hold or even increase in value, while Alvin would get the benefit of using the property as he sees fit. Alvin specifically requested to retain ownership of the home, and the chancery court granted it, in part, because of Alvin's sentimental value in the property. We find that there is sufficient evidence in the record to support the chancery court's decision on this issue.

¶24.    Alvin argues that the chancery court did not use lump-sum alimony as a tool for equitable distribution but rather as an award of genuine alimony. This claim rests on the contention that the award was subsequent to the property distribution. Yet, upon review,

11

such is not the case. A typical award of alimony comes after the estate has been equitably divided and one party has a deficit. *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). The chancery court awarded the additional $67,685 in the same order as the division of property using the *Ferguson* factors, prior to finishing its balancing of the parties' total estates. According to the chancery court, the additional award of $67,685 was necessary to make the distribution equitable.

¶25. The chancery court could have approached this balancing in a different way. For instance, the court could have ordered the sale of the home and awarded Anna the $67,685 out of those funds. It is accepted practice, however, to use lump-sum alimony in the equitable division of a marital estate. *Davenport*, 156 So. 3d at 241 (¶34). Because this award was a part of the equitable distribution, the chancery court was not required to address the *Armstrong* factors in its decision. *Id.* Furthermore, there was no need to find a disparity between the estates in the way that Alvin argues. Alvin's citations all deal with genuine alimony, while the lump-sum alimony in question is properly analyzed under *Ferguson* and other equitable distribution caselaw.

¶26. We find that the chancery court properly awarded the additional $67,685 in lump-sum alimony as a tool in the equitable distribution of property. Therefore, an *Armstrong* analysis was not necessary. Accordingly, we do not find that the chancery court committed reversible error on this issue.

## II. Military Pension

¶27. Alvin argues that the chancery court erred by awarding Anna 45% of his military

12

pension. Specifically, he claims the record does not support the finding that Anna was entitled to a share as a steward of the family home and that the award was inequitable. Finally, he claims the chancery court did not have the authority to retroactively award Anna the military pension to the date of the original order in September 2018.

¶28. "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994). "The chancery court's authority to divide marital assets is born from principles of fairness which are rooted in the court's inherent powers of equity." *Black v. Black*, 741 So. 2d 299, 301 (¶6) (Miss. Ct. App. 1999) (citing *Ferguson*, 639 So. 2d at 927).

¶29. There is substantial evidence in the record to support the chancery court's decision to award Anna a portion of the military pension. The chancery court found that Anna was a steward of the family home and caretaker of their children while Alvin was serving in the military and that Anna was married to Alvin for twenty-five of the twenty-eight years of Alvin's service. Alvin argues that this finding is unsupported by the record because the chancery court also found that both parties were full-time workers and equally shared the family duties. However, this one finding does not negate the other. Property is presumed to be marital, and the burden of rebutting the presumption rests with the spouse claiming the property is non-marital. *Brown v. Brown*, 350 So. 3d 1169, 1178-79 (¶31) (Miss. Ct. App. 2022). Alvin offers no evidence to rebut the presumption that this asset is a marital one.

13

Therefore the chancery court did not commit manifest error in classifying Alvin's military pension as a marital asset.

¶30.    On appeal, Alvin's main argument is that the record, as construed as a whole, does not support the chancery court's decision to award Anna 45% of Alvin's military pension.  He compares the facts in his case to *Love v. Love*, 687 So. 2d 1229, 1232 (Miss. 1997), and *King v. King*, 130 So. 3d 166, 168 (¶5) (Miss. Ct. App. 2014).  In *Love*, the Mississippi Supreme Court affirmed the chancery court when it did not award an equal share in the parties' retirement accounts, leaving one party with his retirement accounts untouched.  *Love*, 687 So. 2d at 1232.  Likewise, in *King*, this Court affirmed a chancery court decision that failed to award one party with a share of the other's military pension.  *King*, 130 So. 3d at 168 (¶5).

¶31.    The impact from both cases, as it relates to our present case, is that the respective chancery courts applied the *Ferguson* factors and had substantial evidence to support their conclusions.  While the record in the present case may have supported a decision more favorable to Alvin, our standard of review is limited.  "This Court will not substitute its judgment for that of the chancellor '[e]ven if this Court disagree[s] with the lower court on the finding of fact and might arrive at a different conclusion.'" *Owen v. Owen*, 798 So. 2d 394, 397-98 (¶10) (Miss. 2001) (quoting *Richardson v. Riley*, 355 So. 2d 667, 668 (Miss. 1978)).  The chancery court had evidence to support its award and applied the *Ferguson* factors, even awarding Anna less than 50% of Alvin's military pension to address the years Alvin was serving before he was married to Anna.  We find that the chancery court did not abuse its discretion by awarding Anna 45% of Alvin's military pension.

14

¶32. Finally, Alvin contends that the chancery court had no authority to retroactively award Anna the 45% of Alvin's military pension to the date of the first order in September 2018. Alvin provides no caselaw to support his position. He improperly includes one citation that allegedly deals with a retroactive award of child support and alimony in the context of a "serious financial hardship." That case resulted in a supreme court opinion that issued in August 1998 but was not designated for publication, and "[o]pinions in cases decided prior to [November 1, 1998,] which have not been designated for publication shall not be cited, quoted or referred to by any court or in any . . . brief . . . ." M.R.A.P. 35-A(b) & cmt. Nonetheless, the record here does not support the contention that Alvin is suffering from "serious financial hardship." While we have found no case that specifically deals with retroactive awards for division of assets, there is precedent for awards of alimony that are retroactive to the original divorce decree. *Monroe v. Monroe*, 745 So. 2d 249, 253 (¶16) (Miss. 1999); *see also Wallace v. Wallace*, 12 So. 3d 572, 576 (¶19) (Miss. Ct. App. 2009) (finding that a chancellor has the authority to decide to terminate alimony retroactive to the date the party filed his petition). Therefore, we find that the chancery court did not abuse its discretion by retroactively awarding Anna 45% of Alvin's military pension to the original order in September 2018.

### III. Military Survivors Benefits

¶33. Though not one briefed by either Alvin or Anna, this Court finds a mistake in the chancery court's award of survivors benefits through the military's Survivor Benefits Program. The court awarded Anna "forty-five percent (45%) of the fifty-five percent (55%)

of the annuity payable upon Alvin's death," known as military survivors benefits. However, the chancery court then stated "the remaining 10% of Alvin's annuity" would be payable to Alvin's other designated beneficiary, his sister. Based on the language and analysis of the chancery court, awarding 10% to the designated beneficiary would be incorrect. Although unexplained, it apparently is the product of subtracting 45% from 55%. That does not comport with the chancery court's analysis and logic used in making that determination. Therefore, we reverse and render on this issue, awarding Anna 45% of the 55% survivors benefits (or 24.75% of the total), therefore leaving the remaining 55% of the 55% survivors benefits (30.25% of the total) available to Alvin's other designated beneficiaries.

## CONCLUSION

¶34. The chancery court did not abuse its discretion by awarding Anna the lump-sum alimony or 45% of Alvin's military pension retroactive to the September 2018 order. The chancery court properly addressed the issues following the *Ferguson* factors, and there was substantial evidence in the record to support its findings. The lump-sum alimony award was properly awarded using *Ferguson* as a method of equitable distribution rather than genuine alimony. Finally, the chancery court had the authority to retroactively award Anna 45% of Alvin's military pension. Therefore, we affirm the chancery court's order in part, but we reverse and render the order in part as to the percentage of military survivors benefits to Anna.

¶35. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**